# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# STATESBORO DIVISION

| | | | |
|---|---|---|---|
| CECIL DEWITT NELSON, | ) | | |
| | ) | | |
| Movant, | ) | | |
| | ) | | |
| v. | ) | Case No. | CV615-021 |
| | ) | | CR612-005 |
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Respondent. | ) | | |

## REPORT AND RECOMMENDATION

Cecil Dewitt Nelson moves under 28 U.S.C. § 2255 to challenge his conviction. CR612-005, doc. 199.[1] Upon preliminary review under Rule 4(b) of the Rules Governing § 2255 Motions, the Court advised that his motion be denied. Doc. 201, *reported at* 2015 WL 1568171. Nelson has filed a Fed. R. Civ. P. 72(b) Objection and a motion to supplement his § 2255 motion. Docs. 204 & 205. These filings expand significantly the nature of his § 2255 claims. As the district judge has yet to conduct a *de novo* review of initial Report and Recommendation ("R&R"), the

---

[1] The Court is citing to his criminal case docket. Page references are to the CM/ECF screen page rather than the referenced document's own internal pagination.

undersigned hereby **VACATES** the prior R&R and replaces it with this one, which addresses all of Nelson's fleshed-out claims for relief.

**I. BACKGROUND**

Assisted by attorney David Burns, Nelson entered into a plea agreement to plead guilty to a kidnapping conspiracy. Doc. 148 (plea agreement); doc. 150 at 9 (judgment imposing a life sentence). As part of that bargain, he waived his right to both a direct appeal and collateral review. Doc. 188 (guilty-plea hearing tr.) at 43-46. In his § 2255 motion, Nelson did *not* claim that he misunderstood what the judge told him; instead, he asserted only that Burns provided ineffective assistance of counsel ("IAC") by assisting him under an "inherent conflict of interest" (further detailed below) in conjunction with the government's "bad faith."[2] Doc. 199 at 6 (Grounds One & Two). His guilty plea was

---

[2] On an IAC claim a defendant must establish two things: (1) "counsel's performance was deficient," meaning it "fell below an objective standard of reasonableness," and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). To satisfy the deficient-performance prong, Nelson must show that Burns made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment. *Id.* at 687. Nelson also must rebut the strong presumption that Burns' conduct fell within the wide range of reasonable professional assistance. *Id.* at 689. He may satisfy the prejudice prong by showing "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

involuntary, he reasoned, because he "accepted [it] without understanding the concept of conflict of interest." *Id.* at 8. He never does expressly say this -- not *even in* his Objections, doc. 204 at 11 -- but it is clear from the sum total of his § 2255 filing that he wants his conviction vacated so that he can go to trial.[3] *Id.* at 1-23; *see also id.* at 11 (insisting that Burns' conflict prejudiced him, and he would otherwise have chosen to go to trial).

The basis for Burns' conflict of interest, Nelson explained in his opening § 2255 motion/brief, comes from an uncited "Kentucky State

---

[3] Incidentally, Nelson appealed his conviction and sentence and it was affirmed. *United States v. Nelson*, 544 F. App'x 930 (11th Cir. 2013), *mandate issued*, doc. 196 (S.D. Ga. Jan. 22, 2014), *motion to recall the mandate denied*, No. 13-11316 (11th Cir. Mar. 17, 2015), *reh'g pet. returned unfiled* (11th Cir. Apr. 3, 2015). In his Objection, Nelson represents that his "writ of Certiorari petition is still pending in the U.S. Supreme Court timely filed on April 10, 2015." Doc. 204 at 1; *see also id.* at 11. Actually, he has shown only that he has generated a certiorari petition and that he signed it on April 9, 2015. Doc. 204 at 38. He supplies no filing indicia (like a clerk's file stamp), and the Court has located no such filing in the U.S. Supreme Court's publicly accessible docket. This Court thus ignored initially, and again denies here, his "motion to stay" consideration (made in his brief, not a motion, doc. 2034 at 1, 11) of this § 2255 motion while his *certiorari* writ is pending.

Assuming that Nelson filed no *certiorari* petition, he had 455 days (365 + 90) from the January 22, 2014 entry of the Eleventh Circuit's judgment within which to file his § 2255 motion here (*i.e.*, until April 22, 2015). *See Fulmer v. United States*, 2014 WL 1698880 at * 1 (S.D. Ga. Apr. 29, 2014). He "prison-mail" filed his § 2255 motion on January 29, 2015. Doc. 199 at 22. Hence, his § 2255 motion is timely under 28 U.S.C. § 2255(1)'s one-year limitations period.

Supreme Court" decision.[4] His explanation is perhaps best appreciated by referencing the conclusion, reached in some jurisdictions, that both prosecutors and defense lawyers breach ethical norms by advancing IAC claim-waiving collateral waivers. As for prosecutors:

> Several bar associations (e.g., Florida, Kentucky, Pennsylvania, Utah, Virginia) have issued non-binding opinions stating that it is unethical for prosecutors to require guilty pleas to include a waiver of the right to appeal on the basis of ineffective assistance of counsel. The Kentucky Supreme Court held in 2014 that such waivers are unethical, because they protect attorneys from the consequences of providing inadequate representation. The federal government changed its policy in 2014, so that it would no longer ask for a waiver of the right to appeal on this basis as a condition of a plea bargain. Previously, about one-third of U.S. Attorneys' Offices imposed this condition: *United States v. Kentucky Bar Ass'n*, No. 2013-SC-000270-KB (Ky. Aug. 21, 2014). *See* Joe Palazzolo, *Government Rethinks Waivers With Guilty Pleas*, Wall St. J. Sept. 26, 2014, available at WSJ.com.

LAWYERS DESK BOOK § 26.04 *Criminal Procedure* (2015).[5] As for defense lawyers, the Kentucky Supreme Court agreed with that state's bar "that

---

[4] The Court located it: *U.S., ex rel. U.S. Attorneys ex rel. E., W. Dists. of Ky. v. Ky. Bar Ass'n*, 439 S.W.3d 136, 147 (Ky. 2014).

[5] The Eleventh Circuit has referenced the DOJ policy change:

> On October 14, 2014, the United States Department of Justice issued a memorandum to all federal prosecutors regarding the enforcement of appeal waivers in which defendants waive claims of ineffective assistance of counsel on direct appeal and/or collateral attack. *See* Memorandum from James M. Cole, Deputy Attorney General, to All Federal Prosecutors (Oct. 14, 2014), available

4

the use of IAC waivers in plea bargain agreements (1) creates a nonwaivable conflict of interest between the defendant and his attorney, (2) operates effectively to limit the attorney's liability for malpractice, and (3) induces, by the prosecutor's insertion of the waiver into plea agreements, an ethical breach by defense counsel." *Id.* § 26.04. Thus, "[c]onditioning a federal guilty plea on a waiver of the right to appeal based on ineffective assistance of counsel has been held to be unethical (because it relieves incompetent attorneys of consequences of poor representation)[.]" *Id.* § 27.01.

The Court's previous R&R reminded Nelson that he has always been free to claim that Burns was ineffective in negotiating, communicating, or otherwise facilitating the plea bargain itself (*e.g.*, that

---

at http://pdfserver.amlaw.com/nlj/DOJ_Ineffective_Assistance_Counsel.pdf ("For cases in which a defendant's ineffective assistance claim would be barred by a previously executed waiver, prosecutors should decline to enforce the waiver *when* defense counsel rendered ineffective assistance resulting in prejudice *or* when the defendant's ineffective assistance claim raises a serious debatable issue that a court should resolve.").

*Jones v. United States*, 582 F. App'x 845, 845 (11th Cir. 2014) (emphasis added). "As for existing waivers, the policy seems to be this: Where ineffective assistance claims could, in the judgment of the U.S. Attorney, reasonably have some basis, the government will not enforce the waiver. But where such claims lack even facial merit, it will." *Mingo v. United States*, 67 F. Supp. 3d 1370, 2014 WL 7184011 at * 1 (S.D. Ga. Dec. 17, 2014).

5

Burns negligently failed to convey a better plea offer, or lied to or threatened Nelson in some way). So even assuming *arguendo* that Burns' participation here amounts to some sort of ethical conflict, it is beside the point. *United States v. Garst*, 2015 WL 631402 at * 4-5 (D. Kan. Feb. 13, 2015) (rejecting same "inherent conflict of interest" argument since "'a plea agreement waiver of post-conviction rights does not waive the right to bring a § 2255 petition based on ineffective assistance of counsel claims challenging the plea or the waiver.'") (quoting *United States v. Cockerham*, 237 F.3d 1179, 1183–87 (10th Cir. 2001)).[6]

As in *Garst*, the Court pointed out, the record here shows that Nelson understood the nature of the charges against him, the rights he gave up when he entered the guilty plea, and the possible penalties for the offense. He signed his name to his plea agreement, which explained what he was giving up and the consequences he faced. Doc. 148 at 16-20 (his signature is on page 20, under this: "I have read the foregoing Plea

---

[6] This reasoning aligns with *United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002) ("An ineffective assistance of counsel argument survives a waiver of appeal only when the claimed assistance directly affected the validity of that waiver or the plea itself."), quoted in *Williams v. United States*, 396 F.3d 1340, 1341 (11th Cir. 2005) ("It is well-settled that sentence-appeal waivers are valid if made knowingly and voluntarily.").

6

Agreement, consisting of 17 pages, including this one, understand the same, and the matters and facts set forth therein accurately and correctly state the representations that have been made to me and accurately set forth the terms and conditions of the Plea Agreement that has been reached by my attorney on my behalf and with my permission.").

The district judge also thoroughly covered that same ground and found that his plea was knowing and intelligent, including the double waiver. Doc. 188 at 16-53; *see also* doc. 28-29 (asking if Nelson had any complaints with Burns' representation, or any other ways in which the judicial system had treated him; he said no); *id.* at 28 (reminding him that he was waiving his right to complain of process errors). Indeed, Nelson's § 2255 motion cited *no* deficiencies other than his own declaration that Burns operated under the same "inherent conflict" that supported no § 2255 relief in *Garst*, or in *Adame-Najera v. United States*, 2014 WL 6792113 at *1 (N.D. Ga. Dec. 2, 2014). The undersigned concluded that it similarly supports no such relief here. Doc. 201 at 6.

Finally, Nelson (in a supplemental, pre-R&R filing) argued that his guilty plea lacked a statutory factual element (an interstate connection),

7

for the conspiracy he joined was limited to kidnapping someone *within* the State of Georgia. Doc. 200 at 2 ("The court accepted my plea agreement without there being a factual basis for the same in particular, but not exclusive, there was no factual basis as to the element on the interstate commerce."). This Court determined that, even were this argument not waived, much less procedurally defaulted, it still fails on the merits. During Nelson's guilty-plea hearing the judge and the Government spelled out his crime's elements, including the use of a cell phone to commit the crime. Doc. 188 at 34-38, 60, 66 (Nelson conceded this: "Yes, sir, and, you know, using my cell phone."). That's enough. *See United States v. Evans*, 476 F.3d 1176, 1180-81 (11th Cir. 2007) (holding that the use of a cellphone is sufficient to satisfy an element of use of interstate commerce), cited in *United States v. Breal*, 593 F. App'x 949, 952 (11th Cir. 2014).

The Court therefore advised that Nelson's § 2255 motion, doc. 199, as supplemented, doc. 200, should be denied. Doc. 201 at 7.

## II. ANALYSIS

In his 72(b) Rule 72(b) Objection, Nelson restates his "Conflict of Interest" claim in what he calls "Ground One," yet he presents only a conclusion and offers no supporting facts. Doc. 204 at 2. For "Ground Two" he writes: "Conflict of Interest Plea Agreement was obtained by Ineffective Assistance of Counsel and Government's Bad Faith." *Id.* at 2. For "Ground Three" he writes, only: "Showing cause and prejudice." *Id.* To the extent these "Grounds" remain unconnected to any argument coupled with record citation, they fail outright; the Court does not deal with conclusions, only factually/legally supported claims.[7]

---

[7] Conclusory and "laundry-listed" claims simply go nowhere:

> Those who seek habeas relief cannot simply laundry-list their claims and hope that the court will develop (hence, litigate) them on their behalf. *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (no hearing required on claims "which are based on unsupported generalizations"); *Rodriguez v. United States*, 473 F.2d 1042, 1043 (5th Cir. 1973) (no hearing required where petitioner alleged no facts to establish truth of his claims beyond bare conclusory allegations)." *Jeffcoat v. Brown*, 2014 WL 1319369 at * 8 (S.D. Ga. Mar. 27, 2014); *Bartley v. United States*, 2013 WL 6234694 at * 2-3 (S.D. Ga. Dec. 2, 2013) (§ 2255 claims bereft of argument and citation to the record may be denied on pleading-deficiency grounds alone); *see also Johnson v. Razdan*, 2014 WL 1689021 at * 2 (11th Cir. Apr. 30, 2014) ("Although *pro se* briefs are to be construed liberally, a *pro se* litigant who offers no substantive argument on an issue in his initial brief abandons that issue on appeal.").

*Hopkins v. United States*, 2014 WL 2624425 at * 1 n. 3 (S.D. Ga. June 12, 2014); *Riggs v. Warden, Ware State Prison*, 2015 WL 2342056 at * 3 n. 7 (S.D. Ga May 13, 2015), *adopted*, 2015 WL 3549998 (S.D. Ga. May 29, 2015).

9

Next, Nelson faults the undersigned for overlooking a paragraph in his claim about the plea agreement that he signed. His words:

> The Magistrate Judge overlooked Movant's claims in Page 6-2 of supporting facts that: "In plus, the original plea agreement which Petitioner signed had his initials on every pages, but the copied one he was provided or given by this defense counsel did not due to the original plea agreement was reduced for the recording purpose as he stated without Petitioner's agreeme[nt] and acknowledgment to the reduced plea agreement except the last page with his signature attached to the back."

Doc. 204 at 2. But that was not overlooked. Nelson slipped that one paragraph within a series of paragraphs supporting his "conflict of interest" claim (based on Kentucky state practice) connected to the double-waiver. *See* doc. 199 at 8-18. It sat alone, connected to *no* pleading that showed how something that the district judge otherwise directly examined him about (*i.e.*, the plea bargain in the record) amounted to a cognizable § 2255 claim.

Now, after he received the Court's R&R, Nelson expands on this claim,[8] where he seems to be saying that his lawyer tricked him into

---

[8] It is reasonably common for § 2255 movants to try and fill in gaps with a post-R&R supplemental motion, and it is a matter of judicial discretion whether to allow them. One court was reversed for failing to allow such a supplement without explaining why. *Bellefleur v. United States*, 489 F. App'x 323, 324 (11th Cir. 2012) ("We cannot affirm the district court's order on the grounds that the motions to supplement were futile or

signing a different plea agreement than what Nelson authorized: "Movant never authorized this defense counsel to amend the original plea agreement at all where this defense counsel and prosecutor removed his agreed 120 months term of imprisonment out of the original plea agreement which had his initial on every page as the defense counsel admitted in his email message." *Id.* at 3; *see also* doc. 199-1 at 103 (copy of an email exchange between Nelson and Burns). More specifically, Nelson says Burns presented him with a 120-month cap plea agreement that he (Nelson) initialed on every page, but then Burns (colluding with the prosecutor?) somehow switched out some pages at the guilty-plea hearing to subject him to a higher sentencing exposure.

Given the gravity of this allegation (attorney fraud and collusion with a prosecutor), the Court will present movant's core allegations in their entirety -- again, in raw, unedited form:

---

untimely. Bellefleur provided sufficient legal and factual information in the motions to supplement to warrant a justifying reason from the district court."). Some courts "deny" a § 2255 movant's motion to amend (or "supplement") his §2255 motion on futility grounds, in effect reaching the additional claims on the merits. *See, e.g., Moore v. United States*, 2014 WL 1152860 at * 19-22 (S.D. Ala. Mar. 21, 2014). In that the Court still has this case at the preliminary review stage under 28 U.S.C. § 2255 Rule 4(b), the Government can show no prejudice. So, Nelson's *de facto* motion (set forth in his Objection, doc. 204 at 3-11) to supplement his § 2255 motion is granted.

The amended/reduced plea agreement was never authorized by Movant and was submitted to the U.S District Court for conducting the plea hearing without Movant's consent and acknowledgment and without his initial on every page created and caused several obvious questions:

i. Where is Movant's original agreed 120 months term of Imprisonment? No doubt that his amended/reduced plea is more likely as a blank check where the U.S District Sentencing Judge imposed a life sentence upon Movant instead of 120 months.

ii. How stupid man in the world authorized his defense counsel to amend the 120 months term of imprisonment as a blank check seeking for a life imprisonment? Is it making any sense to the Magistrate Judge at all?

iii. The Term of Imprisonment is a major key in the plea bargain, why the amended/reduced one does not have one? How many Americans in this country signed the blank check and gave or mailed to the payees? It is very ridiculous to authorize that such things happened in the plea agreement.

iv. Reading the entire plea proceeding transcript, the U.S District judge never mentioned about how much time or prison term which Movant signed and agreed for except the nature of charges and incidents committed by Movant. At no doubt, when the sentencing process initiated, this Sentencing Judge applied the sentencing guideline which is not applicable to the agreed 120 months term of imprisonment as Movant agreed and signed for with his initial on every page.

> v. Before submitting the amended/reduced plea agreement to the U.S District Court, the defense counsel never showed, never introduced, never advised, never informed and never got the authorization from Movant regarding to this uninitialed plea agreement.
>
> vi. Submitting this amended/reduced plea agreement to the U.S District Court without Movant's authorization, consent, and acknowledgment is fraud and prejudiced Movant substantially where his defense counsel conspired with prosecutor to commit this such unlawful action with deceitful manner, bad faith, and dishonest where this amended/reduced plea agreement should be voided as it never existed.
>
> vii. Not just to enforce the collateral attack waiver, but to void this entire amended/reduced plea agreement as it never existed due to the defense counsel and prosecutor's conspiracy deceitfully amended it without Movant's consent and authorization except attaching his signature as the last page to support the entire amended plea without his initials and authorization.

Doc. 204 at 4-5.

Now having fleshed out his involuntary plea claim (due to fraud by his attorney), Nelson complains that the undersigned "underminded [sic] and overlooked these . . . crucial issues . . . ." *Id.* at 5. The Court did not address this particular claim initially because Nelson failed to adequately

13

plead it in his § 2255 motion. *See Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir.2011) ("The allegations must be factual and specific, not conclusory. Conclusory allegations are simply not enough to warrant a hearing."); *Borden v. Allen*, 646 F.3d 785, 810 (11th Cir.2011) (applying a heightened pleading requirement in habeas cases and noting that "[t]he evidence supporting an [IAC] claim is available following the conviction, if not before. Whatever the claim, though, the petitioner is, or should be, aware of the evidence to support the claim before bringing his petition"); *Gerwald v. United States*, 2014 WL 1681506 at * 3 n. 5 (S.D. Ga. Apr. 28, 2014). In any event, the claim -- as presented *now* -- is dead on arrival.

The district judge informed Nelson, during his guilty-plea hearing, that under the plea agreement he faced life imprisonment:

> Q. Now, if -- I want you to be very sure that you understand -- I can sentence you *under your plea* for up to *life* imprisonment. Do you understand that?
>
> A. Yes, sir.
>
> Q. No question, you understand that. Is that right?
>
> A. Yes, sir.

Doc. 188 at 38 (emphasis added). That exchange negates Nelson's "fraud" claim outright. Even if Burns pulled a "switcheroo" on him by submitting a "life" instead of 120-month capped sentence plea agreement to the district judge, the judge explained to Nelson that *life*, not 120 months like Nelson now claims, in fact was what he faced if he pled guilty. Nelson at that moment could have objected and insisted no, that was not the plea agreement that he signed. But he did not.

This is not, then, a case where a lawyer lied to his client and thus rendered a guilty plea involuntary, *cf.*, *United States v. Sosa*, 782 F.3d 630, 636 (11th Cir. 2015), or dropped the ball on an outcome-altering defense in misadvising his client to plead guilty. *Arvelo v. Sec'y, Fla Dept. of Corr.*, ___ F.3d ___, 2015 WL 3609351 at * 3 (11th Cir. June 10, 2015). Instead, the record shows that the district judge explained and emphasized the *life sentence* exposure memorialized in the plea agreement of record. Rather than protesting that he had been duped, Nelson acknowledged his understanding of the possible life sentence. It follows that no evidentiary hearing is warranted because no IAC

claim is supported.[9]

Finally, the Court grants Nelson's motion (doc. 205) to supplement his §2255 motion with his post-R&R "*Blakely*" claim[10] (*i.e.*, that his kidnapping sentence was improperly enhanced by a "serious bodily injury" finding that only a jury could find, not the sentencing judge). Nelson claims prejudice, arguing that his sentencing range would be 324-405 months, rather than life, absent this error. Doc. 205 at 2. But that is a direct-appeal issue, and claims which could have been raised on direct appeal may not be pursued in a § 2255 motion. *Massaro v. United States*, 538 U.S. 500, 504 (2003); *see also McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir.2011) ("Under the

---

[9] *Rosin v. United States*, 786 F.3d 873, 878 (11th Cir. 2015) (an evidentiary hearing is unnecessary on a motion to vacate when the petitioner's allegations are affirmatively contradicted by the record or if such claims are patently frivolous); *Aron v. United States*, 291 F.3d 708, 714-15 (11th Cir. 2002) (same); *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (concluding that a petitioner's ineffective assistance claim can be dismissed without an evidentiary hearing when the petitioner alleges facts that, even if true, would not entitle him to relief); *Dickson v. Wainwright*, 683 F.2d 348, 351 (11th Cir.1982) ("On habeas a federal district court need not conduct an evidentiary hearing if it can be conclusively determined from the record that the petitioner was not denied effective assistance of counsel.").

[10] *See Blakely v. Washington*, 542 U.S. 296, 301 (2004) (the Sixth Amendment prohibits a judge from finding facts that raise the maximum penalty beyond that authorized by the jury's verdict); *see also id.* at 303-04 (hence, "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings.").

procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding.") (internal quotation marks and citation omitted); *Black v. United States*, 373 F.3d 1140, 1142 (11th Cir. 2004) ("Generally, if a challenge to a conviction or sentence is not made on direct appeal, it will be procedurally barred in a 28 U.S.C. § 2255 challenge . . . [unless the petitioner shows] both cause for his default as well as demonstrating actual prejudice suffered as a result of the alleged error."). Nelson did not raise the *Blakely* claim on appeal. It therefore is procedurally defaulted, and Nelson pleads no cause or prejudice to overcome it.

## III. CONCLUSION

Cecil Dewitt Nelson's *de facto* motion (set forth in his Objection, doc. 204 at 3-11) to supplement his § 2255 motion is **GRANTED**. His § 2255 motion, however, should be **DENIED**. Applying the Certificate of Appealability (COA) standards set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009), the Court discerns no

COA-worthy issues at this stage of the litigation, so no COA should issue. 28 U.S.C. § 2253(c)(1). And, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, *in forma pauperis* status on appeal should likewise be **DENIED**. 28 U.S.C. § 1915(a)(3).

**SO REPORTED AND RECOMMENDED** this 15Th day of July, 2015.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORIA